# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS


H&L ASSOCIATES OF KANSAS CITY, LLC,

                Plaintiff,

v.                                           Case No. 12-2713-EFM-DJW

THE MIDWESTERN INDEMNITY
COMPANY,

                Defendant.


## MEMORANDUM AND ORDER

In this insurance coverage dispute, the parties disagree on whether damages to a commercial building owned by Plaintiff are covered under an insurance policy issued by Defendant. This matter is presently before the Court on Plaintiff's Motion to Compel (ECF No. 29). Plaintiff requests an order pursuant to Fed. R. Civ. P. 37 compelling Defendant to provide a full and proper response to its First Interrogatory No. 2 and to produce documents responsive to its First Request Nos. 7, 9, 10, 13–16, 18, 19, 21, and 30. As discussed below, the motion is granted in part and denied in part.

## I.       Relevant Background Facts

Plaintiff H&L Associates of Kansas City, LLC obtained a commercial insurance policy from Defendant The Midwestern Indemnity Company to insure a commercial building located in Kansas City, Missouri. Plaintiff alleges that on April 2, 2012, the building experienced a "roof collapse," which is a cause of loss covered under the policy. On April 30, 2012, Defendant

denied coverage of Plaintiff's claim. On November 7, 2012, Plaintiff filed this action asserting claims for breach of contract, vexatious refusal to pay, breach of duty of good faith and fair dealing, and willful and wanton misconduct.

Relevant to the instant motion, Plaintiff served its First Interrogatories and First Request for Production of Documents on Defendant on April 10, 2013. Defendant served its Responses to Plaintiff's First Interrogatories Nos. 1–4 and First Request for Production of Documents Nos. 1–31 on May 28, 2013. After attempting to confer as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2, Plaintiff filed the instant motion to compel on June 18, 2013.

On July 5, 2013, Defendant served its First Supplemental Responses to Plaintiff's First Request for Production of Documents Nos. 3–9, 11–16, 18–21, 24–28, and 30–31. That same day, it also produced a Privilege/Redaction Log. On July 9, 2013, Defendant filed its Response (ECF No. 40) in opposition to Plaintiff's motion and served its Second Supplemental Responses for Request Nos. 18, 19, and 21.

## II.     Discovery Sought by Plaintiff

In its motion, Plaintiff initially requested an order compelling Defendant to fully respond to Interrogatory No. 2 and produce documents responsive to Request Nos. 3–6, 7–9, 11, 12, 13–16, 18–19, 20, 21, 24–26, 27, 28, 30, and 31. In its reply brief, Plaintiff advises that the parties have resolved their dispute as to Request Nos. 3–6, 12, 24–26, and 27. Plaintiff further advises that the parties have resolved their dispute with regard Request Nos. 20, 28, and 31 but requests that the Court order Defendant to produce the documents it agreed to produce. Defendant advises in its response brief that it has withdrawn its objection to Request No. 11. Plaintiff also moved

to compel with respect to Request No. 8, but neither party addresses it in the response or reply. The Court therefore concludes that any disputes as to Request No. 8 have been resolved. Finally, although Plaintiff did not specifically refer to Request No. 10 in its motion or memorandum in support, both parties discussed it in the response and reply, thus suggesting that its omission in the motion was in error. The Court will thus review the following discovery requests: Interrogatory No. 2 and Request Nos. 7, 9, 10, 13–16, 18, 19, 21, and 30.

### A.    Interrogatory No. 2 (Persons With Knowledge)

Interrogatory No. 2 asks Defendant to "[i]dentify by name all persons who have knowledge of the pertinent facts related to the underwriting of the Insurance Policy, the issuance of the Insurance Policy, the terms and conditions of the Insurance Policy, and/or the denial of the Insurance Claim . . . ." For those individuals, Plaintiff asks Defendant to "provide the person's employer, job title, and contact information, and describe generally the nature of the person's knowledge."

Defendant objected to the interrogatory to the extent it sought information not relevant to the claims or defenses of the parties. It also objected to the interrogatory on the grounds it is overbroad, which would make responding to it unduly burdensome. It then answered the interrogatory as follows:

> Without waiving these objections, and subject thereto, [Defendant] Midwestern refers Plaintiff to those individual[s] and entities identified in Midwestern's Initial Disclosures and those individuals identified in the documents produced in response to Plaintiff's requests for production.

Defendant states in its response brief that Interrogatory No. 2 is no longer in dispute because Plaintiff provisionally agreed to Defendant's proposal to identify each of the individuals

by identification number in the claim notes it produced.  Defendant asserts that this will identify anyone involved in the handling of the claim, as requested by the interrogatory. Plaintiff disagrees that the interrogatory is no longer in dispute.  It claims that its provisional agreement on this interrogatory was predicated on Defendant providing certain information that has not yet been provided.  According to Plaintiff, Defendant has only provided names for some of the users listed by identification number in the claims logs, and it has not provided any job titles or any general descriptions of the knowledge held by any of its personnel.  It requests that the Court overrule Defendant's objections to Interrogatory No. 2 and order it to fully and properly answer the interrogatory by identifying the individuals with knowledge by their name rather than an identification number, and providing their job title, employer name, contact information, and description of their knowledge.

### 1.    Relevancy and Overly Broad Objections

Defendant initially objected to Interrogatory No. 2 as irrelevant, but did not reassert that objection in its response to Plaintiff's motion to compel. Accordingly, the Court deems Defendant's relevancy objection to this interrogatory as abandoned.[1] Defendant does however reassert its related overly broad objection to the interrogatory. Defendant argues that the interrogatory is overly broad because answering it requires Defendant to identify every person who has ever sold, obtained, or adjusted a claim relating a policy of insurance that contains the same form language as the subject policy.

---

[1] *See Cardenas v. Dorel Juvenile Grp., Inc.,* 230 F.R.D. 611, 615 (D. Kan. 2005) (objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned).

Plaintiff maintains that the interrogatory is not overly broad but is appropriately limited to the issues raised in the complaint, which include the underwriting, issuance, terms and conditions of the subject insurance policy, and the denial of the specific insurance claim at issue in this case. Plaintiff argues that identification of individuals and a description of the general nature of the knowledge possessed by each person is an important precursor to deposition testimony. Plaintiff states that this information is also pertinent in deciding who it should depose.

In *Wichita Fireman's Relief Association v. Kansas City Life Insurance Co.*,[2] the plaintiff propounded an interrogatory similar to the one at issue in this motion, seeking the identity of "all persons with knowledge of the pertinent facts related to the denial of the claim made by plaintiff . . . ."[3] The defendant had objected that the interrogatory was overly broad as it may implicate people beyond those who have personal knowledge.[4] Finding the objection to be meritless, the court noted that interrogatories that request the identity of persons with knowledge of a situation are a commonly used, and acceptable, discovery technique.[5]

Here, Interrogatory No. 2 asks Defendant to identify individuals who have knowledge of *the* Insurance Policy, referring to the underlying insurance policy at issue. Furthermore, the interrogatory is specifically limited to the underwriting and issuance of the insurance policy, the terms and conditions of the insurance policy, the denial of the insurance claim, and specific facts

---

[2] No. 11-1029-CM-KGG, 2011 WL 4908870, at *2 (D. Kan. Oct. 14, 2011).

[3] *Id.*

[4] *Id.*

[5] *Id.*

relating to the knowledge of individuals involved with these aspects of the insurance policy at issue. Given the interrogatory's limitation to the underwriting, issuance, and terms and conditions of the subject insurance policy, and the denial of the insurance claim at issue, Defendant has failed to show how the interrogatory is overly broad. Defendant's overly broad objection to Interrogatory No. 2 is therefore overruled.

### 2. Sufficiency of Interrogatory Answer

In addition to asking that Defendant's objections be overruled, Plaintiff also asks that Defendant be compelled to provide a "full and proper" answer to Interrogatory No. 2. Specifically, Plaintiff takes issue with Defendant answering the interrogatory by generally referring to documents it produced in discovery. Plaintiff asserts that responding to the interrogatory in this manner is insufficient because the claim activity log produced by Defendant identifies the users only by an identification number and not by name. Plaintiff also complains that Defendant's general reference to all 715 pages of documents it has produced—without specifying the particular records that are responsive—does not constitute a proper interrogatory response under Rule 33(d). And, because the interrogatory seeks information that is not readily apparent from the documents or easily discernable (such as a description of the general nature of each person's knowledge), Plaintiff argues that the mere reference to documents previously produced is insufficient on its face to provide the information requested. It asks the Court to order Defendant to provide a full and proper answer to Interrogatory No. 2, including all information requested therein.

Fed. R. Civ. P. 33(d) gives the party served with an interrogatory the option of producing

its business records from which the answer can be obtained instead of preparing a direct answer when the answer "may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . and the burden of deriving or ascertaining the answer will be substantially the same for either party." In this case, Defendant's interrogatory response referring to its Rule 26 initial disclosures and other unspecified documents it previously produced in response to requests for production does not comply with the Rule 33(d) option to produce its business records in lieu of answering the interrogatory. As this Court has previously noted in *Allianz Insurance Co. v Surface Specialities, Inc.,*[6] a party answering an interrogatory may not merely refer to other pleadings or its Rule 26(a) disclosures hoping that the party propounding the interrogatory will be able to glean the requested information from them. In *Allianz,* the court addressed an interrogatory seeking identification of persons with knowledge, similar to the interrogatory at issue here. The *Allianz* court found that the generic interrogatory response that "information responsive to this request was previously provided as part of the Fed. R. Civ. P. 26 disclosures" did not constitute a responsive answer to the interrogatory.[7]

In this case, the Court likewise finds that Defendant's interrogatory response referring Plaintiff to its Rule 26 initial disclosures and other unspecified documents it previously produced does not constitute a proper interrogatory answer. Even if Defendant's response had specifically identified the documents it produced that contained responsive information—such as the claim

---

[6] No. 03-2470-CM-DJW, 2005 WL 44534, at *4–5 (D. Kan. Jan. 7, 2005).

[7] *Id.*

activity log, its response would still be deficient. A review of the claim activity log produced by Defendant shows that it does not provide all the information requested by the interrogatory. The individuals listed in the claim activity log are only referenced by an identification number and not by their name or title. Nor does the claim activity log provide the individuals' employer, contact information, or general description of their knowledge related to the insurance policy and claim at issue.

Defendant's relevancy and overbreadth objections to Interrogatory No. 2 are therefore overruled and Plaintiff's Motion to Compel is granted. Within 30 days of the date of this Memorandum and Order, Defendant must serve a fully responsive answer to Interrogatory No. 2 by providing all the information requested by the interrogatory, including the full name of all individuals with knowledge, their employer's name, job title, contact information, and general description of the nature of each person's knowledge related to the insurance policy and claim.

**B.     Request Nos. 7, 9, and 10 (Claims File, Correspondence, and Reports)**

Request for Production of Documents No. 7 seeks the "entire contents of your claims file regarding the Insurance Claim." Request No. 9 asks Defendant to produce "[a]ll correspondence and communications (including e-mail) between you and any person who investigated the Insurance Claim." Request No. 10 seeks "[a]ll reports made by any person who investigated the Insurance Claim." In its May 28, 2013 responses, Defendant objected to Request No. 7 and 9 (but not 10) on the grounds that they sought information protected by the attorney-client

privilege and the work product doctrine.[8]  It then referred Plaintiff to "claims materials produced

with the responses" for all three requests for production and produced certain materials, such as

the claim activity log, with portions redacted.  Defendant contends that the information it

redacted is protected from disclosure under the attorney-client privilege and/or work product

doctrine.

In its motion to compel, Plaintiff requests that the Court find that Defendant has waived

its assertion of attorney-client privilege and work product protection because it failed to produce

a privilege log or otherwise substantiate the privilege or protection claimed for the information

redacted or withheld.  Plaintiff contends that Defendant's privilege and work product objections

should thus be overruled and Defendant compelled to produce complete copies of the redacted

and withheld materials.

On July 5, 2013, thirty-eight days after it served its discovery responses (and presumably

produced responsive documents) and seventeen days after Plaintiff filed the instant motion to

compel, Defendant produced a two-page "Privilege/Redaction Log."[9]  The privilege log contains

four columns identifying the page number(s), date(s), description of document, and

privilege/protection claimed.  The first ten privilege log entries are redactions on Defendant's

claim activity log.[10]  The last eight entries are described as "internal emails involving counsel" or

---

[8] Defendant also initially asserted a relevancy objection to Request No. 7, but did not include the objection in its First Supplemental Responses.

[9] Ex. E to Def.'s Resp. in Opp'n (ECF No. 40-5).

[10] The redacted claim activity log is filed under seal as Exhibit 4 (ECF No. 33).

"correspondence with counsel," however it is unclear to the Court whether these entries represent redacted information or documents withheld in their entirety.

### 1.    Timeliness of Defendant's Privilege/Redaction Log

Plaintiff first argues that Defendant waived its claims of attorney-client privilege and work product protection by failing to produce the privilege log timely.  At the time Plaintiff filed the motion to compel, Defendant had not produced a privilege log for the information it had redacted or withheld.

Fed. R. Civ. P. 26(b)(5)(A) provides that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  The party who withholds discovery materials under a claim of privilege or work product must provide sufficient information, usually in the form of a privilege log, to enable the party seeking the discovery to evaluate the applicability of the privilege or protection.[11]  "Failure to follow the Federal Rules of Civil Procedure may result in waiver of the attorney-client privilege and/or work-product protection."[12] If a party fails to make the required

---

[11] *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.,* 586 F. Supp. 2d 1250, 1266 (D. Kan. 2008).

[12] *Id.*

showing, by not producing a privilege log or by providing an inadequate one, the court may deem the privilege waived.[13]

Under Rule 26(b)(5)(A), the privilege log is due "[w]hen a party withholds information." For a party served with a request for production, Rule 34(b)(2)(A) requires that the party "must respond within 30 days after being served." Thus, the privilege log would be due at the time the party's responses to requests for production are due as that would be the time when the party is deemed to have withheld responsive information. For this case, Defendant's privilege log would have been due at the time it produced the redacted documents or when it withheld or failed to produce documents responsive to the discovery requests.

In cases where waiver is based upon the untimely production of the privilege log, courts "often reserve such a penalty for those cases where the offending party unjustifiably delayed in responding to the discovery requests or acted in bad faith."[14] The court expressed the particular harshness of waiver of attorney-client privilege and work product in *White v. Graceland College Center for Professional Development & Lifelong Learning, Inc.*, stating "[m]inor procedural violations, good faith attempts at compliance and other such mitigating circumstances bear against finding waiver."[15] In *White*, the court noted two other cases where the privilege log was

---

[13] *Sprint Commc'ns Co. L.P. v. Big River Tel. Co., LLC*, No. 08-2046-JWL, 2009 WL 2878446, at *1 (D. Kan. Sept. 2, 2009).

[14] *Id.*

[15] *White,* 586 F. Supp. 2d at 1266.

untimely and the court found waiver was too harsh of a sanction.[16] In one case, a party presented a privilege log twenty-three days after asserting attorney-client privilege and work product.[17] In the other case, the party produced its privilege log two months after it served its initial discovery responses.[18] Based on these cases, the *White* court found that waiver was not justified where the privilege log was submitted less than a month after the discovery responses.

Waiver based upon the failure or untimely production of a privilege log has also not been found for redacted information—in contrast to documents withheld in their entirety—where the party seeking the discovery was put on notice by the redaction itself that information was being withheld. In *CresCom Bank v. Terry*,[19] the defendant argued that the plaintiff's failure to timely provide a privilege log for redacted portions of its documents waived any claim of privilege as to the redactions. In finding no waiver, the *CresCom* court reasoned that although the plaintiff failed to include entries for the redacted documents in the privilege log, its production of the documents in a redacted state put the defendant on notice that information was being withheld.[20] The court further found that it was apparent from the face of the documents that the redacted

---

[16] *Id.*

[17] *Id.* (citing *Heavin v. Owens-Corning Fiberglass*, No. 02-2572-KHV-DJW, 2004 WL 316072, at *2 (D. Kan. Feb. 3, 2004)).

[18] *Id.* (citing *Sawyer v. Sw. Airlines*, No. 01-2385-KHV, 2002 WL 31928442, at *1 (D. Kan. Dec. 23, 2002)).

[19] No. 2:12-cv-00063-PMD, 2013 WL 3946222, at *2 (D.S.C. July 31, 2013).

[20] *Id.*

portions involved communications to and from the plaintiff's counsel.[21] Therefore, even without an entry in the privilege log, the documents themselves provided the defendant with enough information to identify the nature of the documents and assess the claim of privilege as to the redacted portions.[22]

In the present case, although Defendant did not provide a privilege log at the time it produced the redacted documents, it did provide a privilege log on July 5, 2013, a little more than a month after it asserted the privilege/protection. Also, the privilege log entries for the claim activity log redactions, along with the unredacted information on the claim activity log, provide sufficient information for Plaintiff and the Court to assess the privilege/protection being claimed. Thus, Plaintiff was notified that Defendant had withheld information on the claim activity log at the time it received the redacted documents. The Court declines to find waiver based upon the untimely submission of a privilege log under these circumstances.

### 2.      Sufficiency of the Privilege/Redaction Log

Plaintiff next argues that Defendant has failed to establish its claims of attorney-client privilege and work product protections because the privilege log it ultimately produced is wholly deficient.  It claims that Defendant's privilege log is insufficient for it to determine whether the redacted portions meet the requirements of the asserted privileges. More particularly, Defendant's privilege log does not describe the purpose for which each document was prepared.

---

[21] *Id.*

[22] *Id.*

Nor does it contain the identity of the person who prepared the purportedly privileged document or the person to whom the document was directed. Finally, the privilege log fails to explain the reasons for the objection to discovery.

The two-page privilege log provided by Defendant contains eighteen entries detailing communications that Defendant claims are protected from disclosing as attorney-client privileged and/or work product. The privilege log lists the date(s) of the documents, the page number(s) of the redacted documents, a brief description of the document, and the privilege/protection being claimed.

(a) <b>Privilege Log Entries Identified as H&L 000000015–30 (Claim Activity Log Redactions)</b>

The first 10 redactions identified on the privilege log are from pages H&L 000000015–30 of Defendant's claim activity log. According to Defendant, the redacted entries relate to communications with its attorney. Plaintiff has filed the 14 pages of the claim activity log that contain Defendant's redactions.[23]

Privilege log requirements apply implicitly to documents produced with redactions.[24] In *ACE USA v. Union Pacific Railroad Co., Inc.*,[25] the plaintiffs provided privilege logs identifying

---

[23] Sealed Ex. 4 to Pl.'s Sugg. in Supp. of Mot. to Compel (ECF No. 33).

[24] *See ACE USA v. Union Pac. R.R. Co., Inc.*, No. 09-2194-KHV/DJW, 2011 WL 2199820, at *4–7 (D. Kan. June 6, 2011) (the court reviewed the plaintiffs' privilege log of redacted documents to determine whether the redactions were properly protected by the attorney-client privilege and the work product doctrine). *See also Youell v. Grimes*, 202 F.R.D. 643, 655, *vacated* on *reconsideration on other grounds by* 168 F. Supp. 2d 1233 (D. Kan. 2001) (setting out the privilege log requirements when a party redacts information from documents based upon a claim of privilege or work product protection).

[25] No. 09-2194-KHV/DJW, 2011 WL 2199820, at *1 (D. Kan. June 6, 2011).

information that was redacted from produced documents based upon the attorney-client privilege and the work product doctrine. During its *in camera* review of the eleven disputed redactions, the court reviewed the redactions privilege log, as well as copies of the unredacted documents in analyzing whether the redactions were properly protected by the attorney-client privilege and/or the work product doctrine. It noted that the proponent of the claimed privilege or protection was required to provide sufficient information to enable the requesting party and the court to determine whether each element of the privilege has been satisfied.[26]

Based upon the Court's review of the redacted documents provided by Plaintiff and the information provided on the privilege log, the Court concludes that all the redactions identified in the first 10 lines of the privilege log were appropriately redacted as attorney-client privileged. A review of the comments preceding and following the redacted portions provides a strong inference that the redacted material constituted communications between Defendant and its counsel. For example, the text preceding the redaction on page 15 states "We agreed to submit to claims attorney for opinion." It would logically follow that the redacted portion would be the claims attorney's opinion. Likewise, the redactions on pages 18 and 19 are preceded by the statement "Letter has been received from attorney representing insured with arguments disputing the basis of our denial of coverage with threat of litigation." Between the redactions is the unredacted comment "Referral has been made to counsel, assigned Husch Blackwell." As Husch Blackwell is the name of the law firm representing Defendants, the redacted statements

---

[26] *Id.* at *3.

preceding and following this comment would appear to contain attorney-client privileged communications. Based upon its review of the privilege log, the redacted documents, and Defendant's arguments in its response brief, the Court finds that redactions identified in the first 10 lines of the privilege log were appropriately redacted as attorney-client privileged. Plaintiff's request for an order compelling unredacted copies of the redacted documents is therefore denied.

      (b)      **Privilege Log Entries Identified as H&L 000000037–224 (Internal Emails and Correspondence)**

The remaining eight privilege log entries are described either as internal emails involving counsel or correspondence with counsel. It is unclear from the privilege log and the parties' briefing, however, whether these entries represent redacted information or documents withheld in their entirety. In either event, Defendant has not provided enough information for Plaintiff or the Court to assess whether the requirements of the asserted privilege/protection have been satisfied.[27]

Rather than deeming the privilege/protection waived, the Court will instead order Defendant to serve an amended privilege log with respect to redacted pages identified H&L 000000037 through 000000224 (the last eight entries on the privilege log) within 30 days of the date of this Memorandum and Order. The amended privilege log should identify for each entry whether it is for a redaction or an entire document withheld from production. If the entry is for a redaction, then unless the information is visible on the unredacted portions of the documents, the

---

[27] *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005) (party withholding discoverable information based upon a claim of privilege or protection must provide a privilege log sufficient to determine whether each element of the asserted privilege or protection is satisfied).

amended privilege log should contain the following information:  (1) names and job titles of sender and recipient(s) of the emails or correspondence containing the redactions, (2) the purpose of preparing the redacted portion of the document or making the notation, (3) the basis for withholding discovery of the redacted portion or notation, and (4) any other pertinent information necessary to establish that the redacted portion or notation is privileged.

If the privilege log entry represents a document withheld in its entirety, then the amended privilege log should contain all the criteria set forth in *Booth v. Davis*.[28]

### C. Request Nos. 13–16 (Manuals, Procedures, and Guidelines)

In Request Nos. 13–16, Plaintiff asks Defendant to produce manuals, procedures, and guidelines in effect during the last ten years regarding, reflecting or related to:  the issuance and underwriting of policies covering commercial property (No. 13); the examination of commercial property in connection with the underwriting and issuance of insurance (No. 14); generally applicable claims management practices, including the investigation and processing of claims (No. 15); and the handling of claims asserting collapse as a cause of loss under policy provisions identical or substantially similar to the collapse provision under the insurance policy at issue (No. 16).

In its responses served on May 28, 2013, Defendant refused to produce any responsive documents, objecting that the requested materials were not relevant and the requests so overbroad that responding to them would be unduly burdensome.  Defendant later supplemented

---

[28] No. 10-4010-RDR, 2011 WL 1627004, at *7 (D. Kan. Apr. 28, 2011).

each of its responses to Requests Nos. 13–16 on July 5, 2013 (after Plaintiff filed its motion to compel) with the following:

> As written, this request seeks every manual or guideline going back ten years (almost 9 years before the loss at issue in this case) that reflects or has any relation to underwriting polices or issuing insurance policies, regardless of whether or not they have any relation to issues present in this case. In a compromise to resolve any dispute regarding the scope of this request, [Defendant] Midwestern will produce best practices guides and similar materials for the past three years, per its document retention policy.[29]

In its response to the motion to compel, Defendant reasserts its objections that each of the four requests is facially overbroad. It claims that in order for it to determine if there are any earlier versions of these documents, other than those formal documents kept by the company, it would have to determine whether any of its employees or representatives maintained a personal copy of the underwriting or claim practices, which would require individual questioning of current and former personnel from 2003 (over nine years before the claim) forward. Defendant further argues that these requests address general claims handling for all types of policy, beyond what is at issue here. It cites the case, *Kansas Heart Hospital, LLC v. Executive Risk Indemnity, Inc.*,[30] wherein the court found a discovery request seeking similar materials overly broad on its face. In the *Kansas Heart Hospital* case, the plaintiff sought discovery of:

> Every claims handling manual, training manual, operations manual, underwriting manual, procedure manual, policy manual, and every other related document which explains, comments upon, or describes any of your rules, guidelines, or

---

[29] Ex. D to Def.'s Resp. in Opp'n (ECF No. 40-4) at 3–4.

[30] No. 06-1345-MLB, 2007 WL 1125772, at *3 (D. Kan. Apr. 16, 2007).

procedures relating to the investigation and/or evaluation of liability claims arising under your insurance polic[i]es.[31]

Plaintiff maintains that the specificity and the incorporation of subject matter limitations in its discovery requests are very similar to discovery requests that have been enforced in other insurance coverage disputes in the District of Kansas.[32] It argues that the *Kansas Heart Hospital* decision cited by Defendant is distinguishable because the specific request the court found overly broad in that case was for *every* claims manual and *all* related documents concerning *in any way* the investigation and evaluation of all liability claims arising under *any* of defendant's insurance policies. Plaintiff argues that the court there found the request overbroad because it encompassed "other types of insurance policies such as automobile or property insurance" that were not at issue in the case. In contrast to the discovery request at issue in *Kansas Heart Hospital*, Plaintiff claims that its discovery requests seek manuals, procedures and guidelines specific to commercial property like the insured building that is the subject of this lawsuit (Request Nos. 13 and 14); generally applicable practices that would or should have been used in handling Plaintiff's insurance claim (Request No. 15); and collapse claims arising under provisions identical or substantially similar to the disputed provision in this case (Request No. 16).

Reviewing the requests at issue here, the Court does not find Request Nos. 13–16 to be overly broad on their face. The requests seeking Defendant's manual, procedures and guidelines are limited to insurance policies covering commercial property and to specific aspects of

---

[31] *Kansas Heart Hosp.*, 2007 WL 1125772, at *3.

[32] Plaintiff cites *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 646 (D. Kan. 2007); and *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2192-JWL-DJW, 2007 WL 1531846, at *12-13 (D. Kan. May 25, 2007).

Defendant's business such as the issuance and underwriting of policies, examination of commercial property, claims management practices, and the handling of claims asserting a collapse under substantially similar policy provisions. Unlike the discovery request at issue in the *Kansas Heart Hospital* case, Plaintiff's Request Nos. 13–16 do not seek *every* claims manual and *all* related documents concerning *in any way* the investigation and evaluation of all liability claims arising under *any* of Defendant's insurance policies.

While the Court does not find the requests facially overly broad, Defendant does raise valid objections regarding the ten-year scope of the requests. Defendant has offered to produce its best practices guides and similar materials for the past three years, per its document retention policy. Plaintiff has not explained its need for manuals, procedures, and guidelines in effect during the last *ten* years. The Court finds that the three-year period offered by Defendant is a more reasonable time period for discovery of its manual, procedures, and guidelines. Defendant's overly broad objections are therefore sustained in part. Defendant shall produce manuals, procedures, guidelines, and other similar documents in effect during the last <u>three</u> years that are responsive to Request Nos. 13–16.

### D.       Request Nos. 18–19 (Claim Files for Other Collapse Claims)

Plaintiff's Request No. 18 asks Defendant to produce:

> The claims files for the five earliest and five latest claims made by your insureds in each of the last ten years for losses to commercial property located in Missouri and in which the claimant alleged a covered collapse under a policy provision identical or substantially similar to the Collapse provision.

Request No. 19 seeks a similar set of claim files, but for losses to commercial property under policies issued in Kansas.

In its initial responses served on May 28, 2013, Defendant refused to produce any responsive documents, objecting that the requested claim files are not relevant and the requests are overly broad, which makes responding to the requests unduly burdensome. On July 5, 2013, Defendant supplemented its responses to Requests Nos. 18–19. Continuing to assert relevancy, overly broad, and unduly burdensome objections, it further explained:

> [Defendant] Midwestern has no ability to search claim files electronically to discern which claims over the past 10 years involved a "collapse" claim as opposed to any other type of claim under commercial property policies. A search can be conducted for a particular policy form, but because the collapse language is contained in the general policy it would do little to limit what would have to be searched manually. For example, any search would also bring up hail claims, broken water pipes, or any other type of claim involving property damage. Consequently, the search requested by Plaintiff, which would include claims spanning back almost 9 years before Plaintiff's claim, would require a manual search and review of thousands of claim files.[33]

Four days later, on July 9, 2013, Defendant served its second supplemental responses to Requests Nos. 18–19, in which it continued to assert relevancy, overly broad, and unduly burdensome objections. It further stated in its responses that "[w]ithout waiving these objections, and subject thereto, to the extent they exist," it will produce all non-work product and non-privileged portions of the claims for the 5 oldest and 5 newest claims for Missouri and Kansas property losses located by Midwestern through an automated search for the term "collapse."[34]

Consistent with its second supplemental responses, Defendant states in its response brief to the motion to compel that "[d]espite its objections to the scope and burdensome nature of the

---

[33] Ex. D to Def.'s Resp. in Opp'n (ECF No. 40-4) at 3–4.

[34] Ex. F to Def.'s Resp. in Opp'n (ECF No. 40-6) at 1–2.

requests, to the extent they exist and can be located, [it] will produce claim files for the 5 oldest and 5 newest Midwestern claims in Kansas and Missouri through an automated search for the term 'collapse.'" It is not entirely clear to the Court whether Defendant is withdrawing its objections to the scope and burdensome nature of these discovery requests or just qualifying the extent of its search efforts and the documents it will produce. In its second supplemental responses served on July 9, 2013, it states "[w]ithout waiving these objections," but in its response brief (also filed on July 9, 2013) it states "[d]espite its objections to the scope and burdensome nature of the requests." The Court construes these statements to mean that Defendant is partially withdrawing its objections to the scope and burdensome nature of the requests to the extent that it will produce claim files for the 5 oldest and 5 newest claims in Kansas and Missouri it finds through conducting an automated search for the term "collapse." If Defendant is continuing to object to the responses because they seek irrelevant information or require unduly burdensome efforts to locate responsive information, the Court overrules those objections. For purposes of its relevancy objection, Defendant has not shown that the pertinent policy provision must be found ambiguous or that parole evidence is appropriate before seeking the discovery requested here (claims files for other collapse claims). Defendant has also failed to support its objection that searching for and producing documents responsive to Request Nos. 18 and 19—beyond conducting an automated search for the term "collapse"—would be unduly burdensome. Accordingly, Plaintiff's Motion to Compel is granted as to Request Nos. 18 and 19, and Defendant is ordered to produce all documents responsive to those requests.

### E. Request No. 21 (Regulatory Complaints)

Request No. 21 asks Defendant to produce "[a]ll documents regarding, reflecting or related to" any complaints filed against Defendant in the last ten years with any regulatory agency concerning Defendant's handling of any claim of loss allegedly due to the collapse of a commercial property insured by Defendant.

In its initial response, Defendant refused to produce any documents, objecting that the requested materials are not relevant, the request is overbroad and thus unduly burdensome, and the term "regulatory agency" is vague and ambiguous. In its first supplemental response, Defendant continued to assert its relevancy, overly broad, and vague and ambiguous objections. It further responded:

> [Defendant] Midwestern has no ability to search files electronically to discern which complaints over the past 10 years involved a "collapse" claim as opposed to any other type of claim under commercial property policies. Consequently, the search requested by Plaintiff, which would include claims spanning back almost nine years before Plaintiff's claim, would require a manual search of every complaint received by any regulatory agency in any state across the country where Midwestern Indemnity is authorized to conduct business.

Defendant later served the following second supplemental response to Request No. 21, reiterating its previous response but with the following addition:

> Subject to its objections, Midwestern is able to conduct an automated nationwide search of regulatory complaints filed against Midwestern arising out of commercial property damage claims. The capacity to conduct a search of this nature only extends back to 2008, which is almost five years. Based upon its search, no such complaints were located for Midwestern.

In its reply brief, Plaintiff requests that the Court overrule Defendant's objections and order it to produce of all the requested regulatory complaints. It argues that Defendant's

23

objection that responding to the request is unduly burdensome is a conclusory objection and is insufficient as a matter of law because Defendant offers no suggestion or evidence of the burden that would be imposed in terms of the time and expense required for it to respond to the request. Plaintiff argues that Defendant has made contradictory representations about its ability to respond by claiming, on one hand, that it has "no ability to search files electronically to discern which complaints . . . involved a collapse," but on the other hand, claiming that it has "conduct[ed] an automated nationwide search of regulatory complaints . . . back to 2008" that has uncovered no responsive documents. Plaintiff argues that at the very least, these representations suggest that there is a body of pre-2008 documents that may be responsive to this request, but which Defendant has not attempted to located or produce.

**1.    Overly Broad Objection to Omnibus Terms "Regarding, Reflecting or Related to"**

As part of its overly broad objection, Defendant specifically objects to Request No. 21's use of omnibus terms such as "regarding, reflecting or relating to" in its request for complaints filed with any regulatory agency in the last ten years.  Citing *Western Resources, Inc. v. Union Pacific Railroad Co.*,[35] Defendant argues that this Court has held that this type of phrasing (unless it modifies specific language) is generally objectionable because of its sweeping nature of lack of specificity. It points to *Western Resources* as an example where this Court held that five discovery requests, each containing the phrase " refer" or "relate to" were facially overbroad and unanswerable.

---

[35] No. 00-2043-CM, 2001 WL 1718368, at *2-3 (D. Kan. Dec. 5, 2001).

Plaintiff maintains that its request is not overly broad. It argues that the phrase "regarding, reflecting or relating to" used in this context modifies a sufficiently specific type of information, namely the relation of this phrase to complaints filed with a regulatory agency concerning Defendant's handling of any claim of loss allegedly due to the collapse of a commercial property insured by Defendant.

The Court agrees that the construction of the request is sufficiently definite because the context of the omnibus phrase relates to a specific set of documents that, in turn, relates back to the issues in this case. Defendant's overly broad objection to Request Nos. 21 based upon its use of the terms "regarding, reflecting or relating to" is therefore overruled.

### 2. Unduly Burdensome Objection

Defendant also objects that responding to Request No. 21 is unduly burdensome because it would require a nationwide search of all regulatory complaints in the last ten years. It asserts that in order to respond to Request No. 21, it would have to search every piece of paper, every communication, and interview current and former employees to determine if any possessed some record that somehow relates to a regulatory complaint anywhere in the country. In addition to having an unlimited geographic scope, the request would also require Defendant's search for responsive documents to extend back ten years, which is almost nine years before the loss at issue in this case. Defendant states that its capacity to conduct an automated nationwide search of regulatory complaints filed against it only extends back to 2008. Searching before then would require a burdensome manual search of every complaint received by any regulatory agency in any state where it is authorized to conduct business. According to Defendant, any possible value

in obtaining such information is outweighed by the undue burden and expense placed in obtaining the information.

Fed. R. Civ. P. 26(b)(2)(C) requires the Court to limit the extent of discovery otherwise allowed if "the burden or expense of the proposed discovery outweighs its likely benefit," considering the needs of the case, amount in controversy, the parties' resources, the importance of the issues, and the importance of the discovery in resolving the issues. In this case, Defendant states that it has conducted an automated nationwide search for regulatory complaints filed against it arising from commercial property damage claims through 2008 and, based upon that search, located no complaints. It objects to conducting a search for complaints filed before 2008 as unduly burdensome. Here, Defendant has persuaded the Court that the burden and expense it would incur in manually searching for regulatory complaints filed in any state prior to 2008 would outweigh the likely benefit of this information. Considering the relative importance of pre-2008 regulatory complaints to the claims in this case, the Court finds that Defendant should not be required to undertake efforts to locate pre-2008 regulatory complaints. Defendant has thus shown that the time or expense involved in conducting a nationwide search for pre-2008 regulatory complaints is unreasonable under the circumstances in light of the marginal benefits to be secured by this discovery. As such, the Court sustains Defendant's unduly burdensome objections to searching for and producing pre-2008 regulatory complaint documents responsive to Request No. 21. Plaintiff's motion to compel is therefore denied as to Request No. 21.

## F.  Request No. 30 (Advertising and Marketing Information)

Request No. 30 asks Defendant to produce "[a]ll documents regarding, reflecting or related to [Defendant's] advertising and marketing in the last five years of commercial property insurance policies containing provisions identical or substantially similar to the Collapse Provision."  Defendant objected that the request does not seek relevant information and is overbroad, which would make responding to it unduly burdensome. Thereafter, on July 5, 2013, in its First Supplemental Responses, Defendant reasserted its objections and supplemented its response as follows:

> As drafted this request calls for every piece of paper related to any marketing of any materials related in any way to any commercial property insurance policy. This would include, for example, a copy of any payment made to any advertising vendor for posting an ad, any correspondence with any marketing company related to placing or designing an ad, or a copy of the paystub for every person under the company's employ that conducts marketing activities. [36]

In its motion, Plaintiff requests that the Court overrule Defendant's objections and enter an order directing Defendant to produce the requested advertising and marketing related materials for its commercial property insurance policies. Defendant continues to object on relevancy grounds, arguing that even if advertising materials exist, they bear no weight in determining coverage under the insurance policy.

The Court agrees with Defendant that Request No. 30 does not appear on its face to request relevant documents. Plaintiff, as the party propounding the request, therefore has the burden to show that the request seeks information relevant to the claims and defenses in the

---

[36] Ex. D to Def.'s Resp. in Opp'n (ECF No. 40-4) at 8.

case.[37] Plaintiff argues that the requested advertising and marketing related materials are relevant to the understanding of the scope of coverage under the collapse provision at issue in this case. Plaintiff further claims that similar discovery was permitted by other federal courts in other insurance coverage litigation, such as *Transcap Associates, Inc. v. Euler Hermes American Credit Indemnity Co.*[38] and *Brigolin v. Blue Cross Blue Shield of Michigan*.[39]

Plaintiff has not convinced the Court of the relevance of the requested advertising and marketing related materials used by Defendant over the last five years for similar types of policies. Plaintiff asserts claims for breach of contract, vexatious refusal to pay, breach of duty of good faith and fair dealing, and willful and wanton misconduct. Plaintiff has not alleged any fraudulent misrepresentation or inducement by Defendant prior to entering into the insurance agreement, or any consumer fraud type of claim. With respect to Plaintiff's relevancy argument, the Court does not see how Defendant's advertising and marketing materials are relevant to the understanding of the scope of coverage as that determination would be based on the actual insurance policy issued rather than Defendant's advertising and marketing materials. Finally, the insurance coverage cases cited by Plaintiff do not establish a general proposition for the relevancy of an insurer's advertising and marketing materials in an insurance coverage dispute case. In *Transcap*, the plaintiff insured sought to compel the defendant insurer's marketing materials, including advertisements, pamphlets and/or brochures pertaining to its insurance

---

[37] *McBride v. Medicalodges, Inc.*, No. 06-2535-JWL, 2008 WL 1958350, at *3 (D. Kan. May 2, 2008).

[38] No. 08-C-723, 2009 WL 3260014, at *6–7 (N.D. Ill. Oct. 9, 2009).

[39] No. 07-CV-15355-DT, 2009 WL 929008, at *2 (E.D. Mich. Apr. 3, 2009).

policies, arguing that the materials were relevant to its claim for consumer fraud.[40]  Noting that the defendant failed to address the requests in its response to the motion to compel, the court then granted the motion.[41]  In the other case cited by Plaintiff, *Brigolin v. Blue Cross Blue Shield of Michigan,*[42] the defendant insurer was ordered to produce advertising materials upon production of affidavits by the plaintiff insured describing the impact of the insurer's advertising upon the insured's understanding of the coverage.[43]

As Plaintiff has not shown how the requested advertising and marketing related materials are relevant to any claims or defenses asserted in this case, the Court therefore sustains Defendant's relevancy objection to Request No. 30.  Because the Court is sustaining Defendant's objection to Request No. 30 on relevancy grounds, further discussion of Defendant's remaining objections to this request is unnecessary.  Plaintiff's motion to compel is therefore denied as to Request No. 30.

III.    **Request for Expenses**

Plaintiff does not request expenses in connection to its motion to compel. Under Fed. R. Civ. P. 37(a)(5)(C), if the motion to compel is granted in part and denied in part, as in this situation, "the court . . . may, after giving an opportunity to be heard, apportion the reasonable

---

[40] *Transcap*, 2009 WL 1543857, at *4.

[41] *Id.*

[42] 2009 WL 929008, at *2.

[43] *Id.*

expenses for the motion."[44] As Plaintiff does not request them and considering the circumstances of this case, the Court finds it appropriate and just for each party to bear its own expenses and fees incurred in connection with Plaintiff's Motion to Compel.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Compel (ECF No. 29) is granted in part and denied in part. The motion is granted as to its First Interrogatory No. 2 and Request Nos. 18–19. The motion is granted in part as to Request Nos. 13–16. The motion is denied as to Request Nos. 21 and 30. With respect to Request Nos. 7, 9, and 10, the Court finds that Defendant has not waived its claim of attorney-client privilege for the redactions and documents listed on its Privilege/Redaction Log. For the first ten privilege log entries, the Court concludes that Defendant has sufficiently shown that the redactions on the claim activity log meet the elements required for attorney-client privilege. For the remaining eight privilege log entries, Defendant must serve an amended privilege log if it continues to claim this information should be redacted/withheld as privileged/protected. **Within 30 days of the date of this Memorandum and Order**, Defendant must:

> (1) Serve a fully responsive answer to Interrogatory No. 2 by providing all the information requested by the interrogatory, including the full name of all individuals with knowledge, their employer's name, job title, contact information, and general description of the nature of each person's knowledge;

---

[44] Fed. R. Civ. P. 37(a)(5)(C).

(2) Provide an amended privilege log with respect to pages identified as H&L 000000037 through 000000224 (the last eight entries on the privilege log);

(3) Produce manuals, procedures, guidelines, and other similar documents during the last three years responsive to Request Nos. 13-16;

(4) Produce claim files for the five oldest and five newest claims in Kansas and Missouri responsive Request Nos. 18 and 19; and

(5) Produce documents it agreed to produce as responsive to Request Nos. 20, 28, and 31.

**IT IS FURTHER ORDERED THAT** each party shall bear its own expenses incurred in connection with this motion to compel under Fed. R. Civ. P. 37(a)(5)(C).

Dated this 25th day of October, 2013, at Kansas City, Kansas.

s/ David J. Waxse
David J. Waxse
U. S. Magistrate Judge