# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

H&L ASSOCIATES OF KANSAS CITY, LLC,

        Plaintiff,

v.                                              Case No. 12-2713-EFM-DJW

THE MIDWESTERN INDEMNITY
COMPANY,

        Defendant.

## MEMORANDUM AND ORDER

In this insurance coverage dispute, the parties disagree on whether damages to a commercial building owned by Plaintiff are covered under an insurance policy issued by Defendant. Pending before the Court is Defendant's Motion to Compel Discovery (ECF No. 49). Defendant requests an order pursuant to Fed. R. Civ. P. 37 compelling Plaintiff to withdraw its objections and fully respond to Defendant's Second Request for Production Nos. 47, 58–60, and 61–65. As set out in more detail below, the motion is granted in part and denied in part.

## I.    Relevant Background Facts

Plaintiff H&L Associates of Kansas City, LLC obtained a commercial insurance policy from Defendant The Midwestern Indemnity Company to insure a commercial building located in Kansas City, Missouri. Plaintiff alleges that on April 6, 2012, the building experienced a "roof collapse," which is a cause of loss covered under the policy. On April 30, 2012, Defendant denied coverage of Plaintiff's claim. It contends that the event did not involve a "collapse" as

defined by the policy, nor was it abrupt or unexpected.  On November 7, 2012, Plaintiff filed this action asserting claims for breach of contract, vexatious refusal to pay, breach of duty of good faith and fair dealing, and willful and wanton misconduct.

Relevant to the instant motion, Defendant served its Second Request for Production of Documents on Plaintiff on June 28, 2013. Plaintiff served its responses and objections to Defendant's Second Request for Production of Documents on August 2, 2013.  After attempting to confer as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2, Defendant filed its motion to compel discovery on September 3, 2013.

## II.     Discovery Sought by Defendant

In its motion, Defendant claims that Plaintiff's responses and accompanying objections to Defendant's Second Request Nos. 47, 58–60,[1] and 61–65[2] are deficient in several respects. It requests that the Court overrule Plaintiff's objections and order Plaintiff to fully respond to its discovery requests.

### A.     Second Request Nos. 47, 58–60 (Roof Condition Correspondence, Inspection and Repair Records)

Defendant's Second Request No. 47 asks Plaintiff to produce communications between it and its property management company for the subject premises regarding the roof of the property from 1997 to the present.  Request No. 58 seeks communications between Plaintiff and its

---

[1] Request Nos. 58–60 are numbered as 35–37 in Pl.'s Resp. & Obj. to Def.'s Second Req. for Produc. of Docs. (ECF 50-1) at 8–9.

[2] Request Nos. 61–65 are numbered as 38–42 in Pl.'s Resp. & Obj. to Def.'s Second Req. for Produc. of Docs. (ECF 50-1) at 9–10.

2

insurance agent pertaining to the condition of the roof of the premises in the 15 years prior to the incident identified in the complaint. Request No. 59 asks for documents that reflect or pertain to any inspection of the roof or roofing system of the premises in the 15 years prior to April 6, 2012. Request No. 60 seeks documents that reflect or pertain to any recommendation, estimate, proposal or bid to perform any repairs to, replace or otherwise modify the roof or roofing system of the premises in the 15 years prior to April 6, 2012.

Plaintiff objected to all four discovery requests as overbroad in time because they seek documents dating back more than 15 years. It also objected to them as being facially overbroad with regard to the scope of the subject matter. It specifically objected to Request Nos. 47 and 58 on the grounds the requests are overbroad in scope because they "relate[] to any 'condition' of the Premises regardless of whether the condition is related to the roof collapse incident or is otherwise relevant in this case." It objected to Request No. 59 as being overbroad in scope because it "relates to any inspection of the roof of the Premises regardless of the purpose of the inspection or the focus of the inspection." It objected to Request No. 60 as being overbroad in scope because it "relates to any repair, replacement or modification of the roof of the Premises regardless of the nature of such work or whether the work is relevant to the roof collapse incident that is the subject of this lawsuit." Finally, Plaintiff objected to all four discovery requests as unduly burdensome. Subject to its objections, it responded to the requests as follows:

Request No. 47 – Plaintiff has produced communications concerning the roof collapse incident that is the subject of this lawsuit.

Request No. 58 – Plaintiff has no such documents in its possession, custody or control.

Request Nos. 59 and 60 – Plaintiff states that the roof of the premises was periodically inspected and routine maintenance was performed by the Quality Roofing Company and record of this work dating back to 2007 have been produced.

1. **Objections to 15-year temporal limitation**

Plaintiff objects to the 15-year temporal scope of the requests. It argues that Defendant has not explained why the repair records already produced for the five years preceding the roof collapse would not be sufficient. According to Plaintiff, Defendant's suggestion that a 15-year scope of production is appropriate because the building is 100 years old misses the point. Plaintiff points out that if the building was 200 years old, a 30-year time period for the scope of production would not automatically become reasonable. Plaintiff contends that the key to the scope of production is relevance to the roof collapse at issue in this case, and there simply is no reason given by Defendant why documents dating back more than five years and concerning unrelated roof components have any bearing in this matter. Plaintiff argues that a primary issue in this case is the slow deterioration of the roof, but a slow deterioration is only relevant if it is somehow related to the roof collapse and Defendant has not made that connection.

Defendant maintains that the requested documents pertaining to the condition, repair, and inspection of the insured building's roofing system going back 15 years are relevant to its contentions that the April 6, 2012 event did not involve a "collapse" as defined by the policy, nor was the event abrupt or unexpected. It argues that one of the primary issues in the case is the slow deterioration of the roofing system. And, because the building is 100-years-old, going back only 15 years—which is the time period when Plaintiff began renting the building to its most recent tenant—

is not unreasonable. It points out that an engineer retained by Plaintiff shortly after the "collapse" stated that the "onset of the [roof truss] failure was from a mechanical unit placed on the roof about 10 years ago." Defendant asserts that the experts agree that removal of the truss bracing is what ultimately caused the loss. It alleges that the truss bracing was likely removed more than 30 years prior to the loss. Finally, it argues that a 15-year period is not burdensome as the same family has owned this particular commercial property for many years.

Defendant has convinced the Court of the reasonableness of the requests for documents pertaining to the condition, repair, and inspection of the insured building's roof going back 15 years—as opposed to the five years' worth of documents provided by Plaintiff. The property at issue is approximately 100 years old. Therefore requesting documents on the condition of the roof for the last 15 years is reasonable, especially because the same tenant has been renting the building during that time period. Defendant's denial of Plaintiff's insurance claim is based upon its assertion that the April 6, 2012 event did not involve a "collapse" as defined by the policy, nor was it abrupt or unexpected. Instead, Defendant is asserting that the "collapse" was caused by the slow deterioration of the roof over time. Information for the 15 years preceding the alleged "collapse" would thus be relevant to the timing of when the alleged slow roof deterioration began and to the rate and degree of any such deterioration. Defendant has also pointed to statements by experts supporting the 15-year temporal scope of its document requests. An engineer retained by Plaintiff has stated that the "onset of the failure was from a mechanical unit placed on the roof about 10 years ago," thus suggesting that Plaintiff's production of documents for the last five years is not sufficient. Finally, as the condition of the roof in the

years preceding the alleged collapse will likely be a significant issue in the case, a 15-year temporal limitation for the requested documentation is reasonable and is not overly broad. Plaintiff's objections to the 15-year temporal scope of Request Nos. 47, 58–60 are therefore overruled.

        **2.**        **Overbreadth objections**

Plaintiff also objects that Request Nos. 47, 58–60 are facially overbroad with respect to the subject matter because they seek documents regarding and pertaining to the condition of the entire roof or roofing system. Request Nos. 47 and 58 ask it to produce all documents generally "regarding" or "pertaining to" the "condition of the roof," while Request Nos. 59 and 60 ask for document that "reflect" or "pertain to" the inspection and repair of the "roof or roofing system." Plaintiff asserts that the claims in this case concern a very specific failure mechanism at a very specific location and moment in time. As described in the complaint, "the roof collapse occurred as a result of the sudden and abrupt failure of a roof truss in the southeast portion of the Subject Property, which had 'rolled' outward and downward under the weight of a rooftop load." The roof covers an area of almost 10,000 square feet and has numerous different interior and exterior structural components (including joists, trusses, rafters, knee wall members, braces, decking, and the roof membrane) that have no relation to the alleged roof collapse. According to Plaintiff, Defendant's discovery requests for all documents regarding, reflecting or pertaining to the condition of the entire roof system will encompass too much information having nothing to do with the failure of a specific roof truss that caused the April 6, 2012 roof collapse at issue in this case.

Defendant maintains that documentation relating to repairs, inspection and reports of the *entire* roofing system is necessary. It points out that Plaintiff's engineer, Mr. Martin, has opined that a combination of conditions, including reduced capacity lateral bracing, the weight of a condenser unit on the roof, and various other issues, resulted in the "sudden facture and excessive twisting and deflection of the roof." The structural engineers hired by Plaintiff, the Lorac Group, attributed the event to roof trusses that were "not braced and were virtually unrestrained and had been for some time." Defendant's structural engineer, Larry Fehner, also opined that the removal of truss bracing at some time in the past to accommodate the installation of a sprinkler system resulted in the unrestrained trusses twisting and eventually moving out of position. This allowed for a deflection in the roof which for years prior to the April 6, 2012 event would fill with water, resulting in additional load on the unrestrained trusses. The load eventually became too much and the roofing fabric was torn, resulting in water entering the building. Defendant argues that limiting discovery to one truss in a building, where the condition of the entire roof structure is at issue, involves splitting hairs beyond the bounds envisioned by the Federal Rules.

The Court agrees with Defendant that the discovery requests should not be limited to a specific part, area, or truss of the insured building's roof. While Plaintiff alleges that roof collapse occurred as a result of the sudden and abrupt failure of a roof truss in the southeast portion of the property, Defendant is claiming that a combination of conditions—including reduced capacity lateral bracing and the weight of a rooftop condenser unit—resulted in the damages. Because this is a significant disputed issue, the discovery requests are therefore not

overly broad with respect to the subject matter. Plaintiff's objections that Request Nos. 47, 58–60 are facially overbroad because they seek discovery on the condition of the entire roof or roofing system are overruled.

### B. Request Nos. 61–62 (Plaintiff's Tax Returns)

Request No. 61 asks Plaintiff to produce its state and federal tax returns for the years 2010 through 2013. Request No. 62 seeks document sufficient to identify the entity or person that prepared the tax returns for 2008 to the present. Plaintiff asserted relevancy objections to both requests.

In its response brief, Plaintiff argues that Defendant's request for tax returns is improper as a matter of law because "tax returns are not generally discoverable, and there is a public policy against exposure of production of them." According to Plaintiff, for Defendant to be able to discover tax returns, the Court must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable. Absent an explanation why tax returns contain unique financial information, Plaintiff contends that the Court should not order the production of those particular documents. Plaintiff also states that it has already produced its 2009 through 2011 bank statements and accounting records, as well as its 2012 through 2013 accounting records. From Plaintiff's perspective, altogether these materials provide Defendant with information on Plaintiff's finances, and Defendant has not explained why the bank statements and accounting records already produced would not be sufficient to provide the information that it seeks concerning Plaintiff's finances.

8

Defendant argues that there is no absolute privilege with respect to the production of tax returns. Instead, in determining whether the production of tax returns is warranted, courts will look to whether the returns are relevant to the subject matter of the action and whether there is a compelling need because the information is not otherwise readily available. Defendant asserts that the issue of income is relevant to the financial position of Plaintiff and its ability to make repairs to the facility, and Plaintiff's tax returns are a necessary and relevant component for this determination. Finally, privacy concerns are not an issue because a protective order has been entered.

The standard for the discovery of tax returns was succinctly set forth by Judge Rushfelt in *Hilt v. SFC, Inc.*:[3]

> The courts have developed a two-pronged test assure a balance between the liberal scope of discovery and the policy favoring the confidentiality of tax returns. First, the court must find that the returns are relevant to the subject matter of the action. Second, the court must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable. The party seeking production has the burden of showing relevancy, and once that burden is met, the burden shifts to the party opposing production to show that other sources exist from which the information is readily obtainable.[4]

In this case, Defendant has convinced the Court that Plaintiff's tax returns could provide information on Plaintiff's financial position and its ability to make repairs to the roof of the building, which is the subject of the insurance claim at issue. The Court, however, does not find

---

[3] 170 F.R.D. 182, 189 (D. Kan. 1997) (citing *Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *11 (D. Kan. Oct. 5, 1995)) (internal quotations omitted).

[4] *Id.*

a compelling need for the tax returns. Plaintiff has sufficiently shown that the financial information sought by Defendant can be obtained from other sources like Plaintiff's bank statements and accounting records. Plaintiff's objection to Request No. 61 is therefore sustained and Defendant's motion to compel is denied as that Request.

With respect to Request No. 62, which seeks documents which identity of the person who prepared the tax returns, the Court finds that Plaintiff has not articulated a valid objection to producing responsive documents (other than tax returns) to this request. Plaintiff's objection to Request No. 62 is therefore overruled and Defendant's motion to compel is granted as that Request.

### C. Request No. 63 (Plaintiff's Bank Statements)

Defendant's Second Request No. 63 asks Plaintiff to produce bank statements for 2010 through 2013. Plaintiff objected to the request as not seeking relevant material, but stated that it had produced certain monthly statements that include bank records. In its response brief, Plaintiff states that it has produced its bank statements for the years 2009 through 2011, as well as accounting records for 2010 to 2013. Altogether, Plaintiff claims that these materials provide Defendant all the information that it needs on the subject of Plaintiff's finances.

Defendant contends that Plaintiff's partial production of its 2009–2011 bank statements is insufficient. It requests that Plaintiff be ordered to produce bank statements from 2012 and 2013, as sought by Request. Defendant argues that, because the purported loss occurred in April 2012, Plaintiff should be required to produce additional bank statements through that time. Statements for the remainder of 2012 to 2013 should also be produced to fully apprise Defendant of

Plaintiff's financial condition and its ability to make repairs after the April 6, 2012 "collapse." Defendant argues that the requested bank statements serve multiple functions, such as establishing a record of expenses, which would include roof repairs and inspections, tracking income for rent payments received, and providing insight as to the financial position of Plaintiff.

The Court agrees that Plaintiff's partial production is not sufficient as the purported loss event occurred in April 2012. Plaintiff is therefore ordered to produce its January through April 2012 bank statements. With respect to bank statements for the remainder of 2012 to present, the Court fails to see the relevance of these bank statements, especially because Plaintiff has produced its accounting records for 2012 and 2013. Plaintiff's relevancy objection to Request No. 63 is therefore sustained in part and overruled in part. Plaintiff is ordered to produce its January through April 2012 bank statements, but not any subsequent ones.

### D. Request Nos. 64–65 (Plaintiff's Accounting Records)

Request No. 64 ask Plaintiff to produce its accounting records for 2010 through 2013. Request No. 65 asks for documents sufficient to identify the entity or individual who maintained the accounting records for those years. Plaintiff objected to the request for its accounting records as failing to identify the categories of documents sought with reasonable particularity. It also objected that the request seeks materials that are not relevant. In its response brief, Plaintiff states that it has produced its accounting records for the years 2010 through 2013. It thus appears that Plaintiff has produced all the accounting records sought by Defendant's request. Defendant fails to otherwise show how Plaintiff's production of its accounting records is insufficient. Defendant's motion to compel is therefore denied as to Request No. 64.

With respect to Request No. 65, which seeks documents which identity of the entity or individual who maintained Plaintiff's 2010–2013 accounting records, the Court finds that Plaintiff has not articulated a valid objection to producing responsive documents to this request. Plaintiff's objection to Request No. 65 is therefore overruled and Defendant's motion to compel is granted as that Request.

### III. Request for Expenses

Defendant does not request expenses in connection to its motion to compel. Under Fed. R. Civ. P. 37(a)(5)(C), if the motion to compel is granted in part and denied in part, as in this situation, "the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."[5] As Defendant does not request them and considering the circumstances of this case, the Court finds it appropriate and just for each party to bear its own expenses and fees incurred in connection with Defendant's Motion to Compel Discovery.

**IT IS THEREFORE ORDERED THAT** Defendant's Motion to Compel Discovery (ECF No. 49) is granted in part and denied in part. The motion is granted as to Second Request Nos. 47, 58–60, 62, and 65; granted in part as to Request No. 63; and denied as to Request Nos. 61 and 64. **<u>Within 30 days of the date of this Memorandum and Order</u>**, Plaintiff must:

(1) Produce roof condition correspondence, inspection and repair records for the 15-year time period requested, responsive to Request Nos. 47, 58–60;

---

[5] Fed. R. Civ. P. 37(a)(5)(C).

(2) Produce documents (other than its state and federal tax returns) sufficient to identify the entity or person that prepared its tax returns for 2008 to the present, responsive to Request No. 62;

(3) Produce its January through April 2012 bank statements, responsive to Request No. 63; and

(4) Produce documents sufficient to identify the entity or person who maintained its accounting records from 2010 through 2013, responsive to Request No. 65.

**IT IS FURTHER ORDERED THAT** each party shall bear its own expenses incurred in connection with this motion to compel under Fed. R. Civ. P. 37(a)(5)(C).

Dated this 1st day of November, 2013, at Kansas City, Kansas.

s/ David J. Waxse
David J. Waxse
U. S. Magistrate Judge
